*In re* MARRIAGE OF ARLIE G. TUCKER, Respondent-Appellee, and MELBA JOSEPHINE TUCKER, Petitioner-Appellant.

Third District   No. 3—91—0038

Opinion filed January 15, 1992.

Michael W. Heller, of Peoria, for appellant.

Lynch & Bloom, P.C., of Peoria (David M. Lynch, of counsel), for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

The marriage of Arlie G. and Melba Josephine Tucker was dissolved on May 10, 1985. At that time, the circuit court of Peoria County incorporated in its order the parties' oral agreement for child support, property distribution and maintenance. On June 20, 1990, Melba filed a petition to modify maintenance and related provisions based on an alleged

substantial change in the parties' circumstances. Arlie moved to dismiss the petition on the ground that any modification of maintenance was expressly precluded by the terms of the original agreement. The trial court granted Arlie's motion to dismiss, and Melba appeals.

The provisions at issue recite in relevant part as follows:

"It is further ordered, adjudged and decreed by the Court, also pursuant to said oral agreement, that if Defendant [Melba] obtains disability insurance in addition to any disability insurance through her place of employment, Plaintiff [Arlie] will pay up to $75.00 per month for premiums on such additional disability insurance which would pay Defendant up to $650.00 per month in disability benefits should she become disabled pursuant to the terms of any such insurance policy, and Plaintiff shall pay said premiums in addition to the maintenance herein provided and for up to seventy-eight (78) consecutive months after the date of this Judgment. If Defendant cannot obtain such additional disability insurance and if Defendant becomes totally disabled as defined in the criteria establishing total disability pursuant to the Social Security Administration, then Plaintiff shall pay to Defendant $300.00 per month in addition to any maintenance hereinafter set forth and said $300.00 monthly payments by Plaintiff to Defendant shall be for a total period of no more than twelve (12) months, either consecutively or cumulatively.

\* \* \*

It is further ordered, adjudged and decreed by the Court, also pursuant to said oral agreement, that the Plaintiff shall pay to the Defendant, as and for maintenance, the sum of Twelve Hundred Dollars ($1,200.00) per month, commencing the first day of the month succeeding the date of this Judgment and continuing at said amount for Seventy-seven (77) consecutive months thereafter for a total of Seventy-eight (78) months, or until the Defendant shall die, remarry, or until further Order of this Court, whichever shall first occur.

All of said payments to be made as and for maintenance as provided above, will be periodic payments in discharge of legal obligation, which, because of the marital or family relationship, is imposed on or incurred by the Plaintiff under this Judgment of Dissolution of Marriage, all within the meaning and intent of Sections 71(a) and 215 of the Internal Revenue Code of 1954, as amended, and as effective January 1, 1985, with respect to amounts of more than $10,000.00 for six (6) consecutive years, and of similar provisions of future laws. Such payments will be

includable in the Defendant's gross income pursuant to Section 71(a) and will be deductible by the Plaintiff from his gross income pursuant to Section 215 in determining their respective taxable incomes. All of said payments made as and for maintenance shall be made directly to the Defendant during the seventy-eight (78) month period set forth above.

\* \* \*

It is further ordered, adjudged and decreed by the Court that the Defendant, having waived all other claims for maintenance and support for herself, is and shall be forever barred from any and all other maintence [*sic*] and support for herself from the Plaintiff, the same as if said marriage had never taken place.

It is further ordered, adjudged and decreed by the Court that both of the parties hereto are and shall be forever barred from any and all other rights of maintenance and support from the other, and from any and all other interest in and to the property of the other, either now owned or hereafter acquired, including all rights of homestead and inheritance, the same as if said marriage had never taken place."

Melba's 1990 petition for modification alleges substantial changes in circumstances and prays, *inter alia,* for an increase in the amount of monthly maintenance to $2,500 "until she should die, remarry or until the death of the Respondent, Arlie G. Tucker, whichever event should first occur," and an increase in the disability supplement to $600.00 per month "for the same period as the \*\*\* maintenance payments." Melba argues on appeal that the agreement contemplated modification prior to the expiration of 78 months by virtue of the contingency, "or until further order of this Court." She says that other expressions indicating the parties' intent to waive further claims for maintenance are not controlling because they are either ambiguous or extraneous boiler-plate language found in most orders of support drafted at the time the court entered the decree in this case.

Arlie argues that the agreement clearly provided for no extension of maintenance beyond 78 months, and that maintenance could only be terminated prior to the expiration of that period by the events specified in the agreement. The clause "or until further order of this Court," he contends, could only further limit the duration of maintenance within the anticipated 78-month period. He says that the provisions waiving "other" maintenance specifically preclude Melba's petition to modify.

Section 502 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 502) authorizes the court to incorporate the parties' oral agreement for maintenance into an enforceable

judgment. The statute specifically addresses limiting modification of terms, but does not suggest any "magic language" for this purpose:

"Except for terms concerning the support, custody or visitation of children, the judgment may expressly preclude or limit modification of terms set forth in the judgment if the agreement so provides. Otherwise, terms of an agreement set forth in the judgment are automatically modified by modification of the judgment." (Ill. Rev. Stat. 1989, ch. 40, par. 502(f).)

A legislative preference for modifying maintenance agreements when it is established that the parties' circumstances have substantially changed appears in section 510 of the Act:

"Except as otherwise provided in paragraph (f) of Section 502, in subsection (d), clause (3) of Section 505.2 [relating to failure to maintain health insurance], and in subsection (b) of this Section [relating to child support and property disposition], the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification and only upon a showing of a substantial change in circumstances." Ill. Rev. Stat. 1989, ch. 40, par. 510(a).

Thus, it has been held that post-dissolution modification of maintenance is judicially precluded only where a settlement agreement clearly and unambiguously expresses the parties' intent to make maintenance nonmodifiable. *In re Marriage of Mateja* (1989), 183 Ill. App. 3d 759, 761, 540 N.E.2d 406, 407, citing *In re Marriage of Chalkley* (1981), 99 Ill. App. 3d 478, 426 N.E.2d 237; *In re Marriage of McFarlane* (1987), 160 Ill. App. 3d 721, 513 N.E.2d 1146; *Simmons v. Simmons* (1979), 77 Ill. App. 3d 740, 396 N.E.2d 631.

Although the parties have not cited any Illinois precedent interpreting an agreement like the one before us, we find guidance in *Mateja* and the cases cited therein. In *Mateja* the parties' agreement specified that the wife could earn up to $13,000 per year before her earnings would have an effect on the husband's support and maintenance obligations. "The agreement also stated: 'The parties further agree that the terms of the Agreement shall be nonmodifiable.' " The court ruled that the clear, unambiguous intent of these provisions was to render the agreement nonmodifiable unless any of the conditions specified (death, remarriage or earnings in excess of $13,000) were first established. *Mateja*, 183 Ill. App. 3d at 762, 540 N.E.2d at 408.

Similarly, in *McFarlane*, the parties' agreement in clause 12 stated that the husband agreed not to seek a reduction in his obligations based on any future income or earnings of the wife. Nine years after the disso-

lution judgment incorporating the agreement was entered, the husband sought a reduction or termination in maintenance on the ground that the wife had failed to rehabilitate herself and provide for her own support. The trial court ruled that the agreement precluded modification. On appeal, the court affirmed, holding that even if the agreement were otherwise modifiable, the specific basis given in husband's petition to modify was foreclosed by clause 12. The reviewing court found no meaningful distinction between the basis specifically barred by the agreement and that urged in the husband's petition to modify. *McFarlane*, 160 Ill. App. 3d at 727, 513 N.E.2d at 1150.

*Simmons* presents a clear statement of the parties' intent to preclude modification. The agreement in *Simmons* stated in clause (c) that the wife agreed to seek no increase in child support based on the husband's increased earnings and the husband agreed to seek no decrease based on his own remarriage or the birth of additional children. The clause continued, "[A]nd in no event is the amount of alimony to be modifiable except for death or remarriage of wife." (*Simmons*, 77 Ill. App. 3d at 741, 396 N.E.2d at 632.) The trial court construed the child support and alimony references together and ruled that alimony was modifiable to the extent that the husband's increased earnings would not be a factor to be considered. On appeal, the court reversed this aspect of the court's judgment, holding that the parties' intentions to make maintenance nonmodifiable were clearly manifested and enforceable pursuant to section 502(f) of the Illinois Marriage and Dissolution of Marriage Act. 77 Ill. App. 3d at 743, 396 N.E.2d at 634.

By contrast to *Simmons*, in *Chalkley*, the parties' agreement did not expressly refer to modifiability. The *Chalkley* agreement contained merely a "cost-of-living adjustment" clause. This clause, the husband argued, expressed the parties' intent to limit modification of maintenance, *i.e.*, allowing an increase only upon a showing of inflation. The trial court rejected the husband's argument and increased maintenance. The court on review agreed that the cost-of-living clause did not preclude the wife's petition for an increase because, unlike *Simmons*, the parties had not specifically recited in the agreement their intention to limit modification based on inflation. *Chalkley*, 99 Ill. App. 3d at 481, 426 N.E.2d at 240.

Turning to the agreement before us today, we find that the parties clearly and unambiguously limited the duration of maintenance by stating that it would not extend beyond the earliest of three specific events—the expiration of 78 months, wife's death or remarriage. The first of these events to occur would mark the termination of Arlie's maintenance obligation. With respect to the "further order of court"

clause, it is clear that the parties intended to leave the door open for an unforeseen event that could terminate Arlie's obligation to pay maintenance prior to the end of the 78 months. By limiting the duration of maintenance to the earliest of the specified events, the parties clearly did not intend to allow for a "further order of court" that would obviate the other three events. We find that this provision, as well as the provision limiting the duration of any disability supplement that may be payable, is in sufficiently simple, clear language and that it can and should be enforced. Thus, even were the court to enter a further order modifying the amount of maintenance or terminating it prior to the end of the 78-month period, the agreement precludes a modification extending Melba's right to maintenance beyond that time. To the extent that Melba's petition to modify seeks such an extension of maintenance and disability payments beyond the periods agreed to, we hold that the trial court correctly determined that the agreement precluded the relief sought.

The question as to whether the parties intended to make the amounts of maintenance or disability payments nonmodifiable within the specified periods is far from clear. Unlike *Chalkley*, the parties' agreement here does not even refer to inflation. Instead, only vague references to future changes in the parties' needs may be gleaned from the last two paragraphs, quoted above, wherein Melba waived "all other claims for maintenance and support for herself," and the parties mutually waived "all other rights of maintenance and support from the other." However, we note that, unlike all other paragraphs relating to property distribution, these last two paragraphs are not prefaced by a reference to the parties' oral agreement. Moreover, they are separated from the rest of the property distribution and maintenance provisions by a paragraph directing Arlie, "also pursuant to said oral agreement," to maintain a $50,000 life insurance policy on the parties' daughter, Kimberly J. Tucker.

Arlie's position that any modification of maintenance is precluded by virtue of Melba's waiver of "other claims for maintenance and support" fails to persuade. In fact, the agreement contains provisions for "other claims for maintenance and support" in the paragraph providing for Arlie's payment of an additional $300 per month for up to 12 months in the event Melba should become totally disabled and up to $75 per month for disability insurance, for up to 78 months. As noted in *In re Marriage of Sherrick* (1991), 214 Ill. App. 3d 92, 96, citing *La Throp v. Bell Federal Savings & Loan Association* (1977), 68 Ill. 2d 375, 370 N.E.2d 188, and *White v. White* (1978), 62 Ill. App. 3d 375, 378 N.E.2d 1255, "The intent of the parties to a contract must be determined with reference to the contract as a whole, not merely by reference to particular words or

isolated phrases but by viewing each part in light of the others." In our opinion, a reading of the entire agreement supports Melba's position that the waiver of Melba's "other claims for maintenance and support" refers to other potential claims in the nature of requests for disability and insurance payments, and not to future modifications in the amount of maintenance based on a showing of a substantial change in circumstances within the prescribed period.

Similarly, the final paragraph of the judgment of dissolution, in which the parties mutually waive "all other rights of maintenance and support from the other," does not convince us that the parties clearly intended thereby to limit modification of the amount of maintenance within the prescribed period. Although we find that the parties' agreement was sufficiently clear to make the duration of payments nonmodifiable in this case without the use of any form of the word "nonmodifiable," we suggest that the better practice is to employ such in any agreement if the parties intend to preclude future judicial modification.

■ Because the agreement incorporated into the judgment of dissolution does not clearly preclude modification of the amounts of maintenance and other benefits within the prescribed periods, we find that the trial court erred in granting Arlie's motion to dismiss Melba's petition for increases prior to the expiration of 78 months or Melba's remarriage as specified in the parties' agreement. On remand, the court should determine whether there has been a substantial change in the parties' circumstances justifying the monetary increases sought, which increases would be payable only within the time limitations prescribed by the parties' agreement.

The judgment of the circuit court of Peoria County is reversed.

Reversed and remanded.

SLATER and HAASE, JJ., concur.